UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, *et al*, <br><br> Plaintiffs, <br> VS. <br><br> W&T OFFSHORE, INC., *et al*, <br><br> Defendants. | § § § § § § § § § § § |

CIVIL ACTION NO. 4:12-CV-2469

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court are the defendant's, W&T Offshore, Inc., ("W&T"), motion for partial summary judgment (Docket Nos. 50 and 51), several responses and replies by the plaintiffs, Indemnity Insurance Company of North America ("Indemnity Insurance" company), New York Marine & General Insurance Company ("New York Marine"), Navigators Insurance Company ("Navigators"), XL Specialty Insurance Company ("XL Specialty"), Liberty Mutual Insurance Company ("Liberty"), and National Liability & Fire Insurance Company ("Starr") (Docket Nos. 61-64, 66-67), and a reply by W&T (Docket No. 65).[1]  The plaintiffs have also filed motions for summary judgment (Docket Nos. 60, 77, 79), to which W&T has replied

---

[1] In its response, Starr argues that W&T's motion for partial summary judgment should be denied because W&T has referenced the wrong Excess Liability policy for interpretation and that the policy W&T has referenced was neither agreed to nor signed by Starr.  In the alternative, Starr has adopted the arguments advanced by Liberty regarding why there is no coverage under the Excess Liability policies (Docket Nos. 62 and 67).  The other plaintiffs also advance essentially the same arguments as Liberty in their motion for summary judgment.  Therefore, since the Court is granting summary judgment based on the arguments advanced by the plaintiffs (and adopted by Starr), Starr is also entitled to summary judgment.  Consequently, the other issues raised by Starr are moot.

(Docket Nos. 65 and 81). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS the plaintiffs' motions for summary judgment.[2]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance coverage dispute. W&T is an energy company that engages in offshore oil and natural gas acquisition, exploration, and development. W&T purchased an Energy Package policy to provide coverage for its offshore assets, including coverage for property damage, operators extra expense, builder's risk, removal of wreck or debris, and losses from named windstorms.

The Energy Package policy, which consists of five insurance policies, provided coverage from June 1, 2008, to June 1, 2009, and was subject to W&T's self-insured retention ("SIR") of $10 million. Policy No. MS-S- 2812 provides 50% of the first $50 million of coverage; Policy Nos. MS-S-2814 and 2815 provides 50% of the second $50 million of coverage; Policy No. MS-S-2813 provides 50% of the first $100 million; and Policy No. MS-S-2816 provides $50 million excess of $100 million in underlying coverage. Thus, under the Energy Package policy, W&T has $150 million in coverage over and above a $10 million SIR.

In addition to the Energy Package policy, W&T also purchased a commercial general liability policy -- MS-S-2773 -- (the "Primary Liability" policy), and several excess liability policies, including the four at issue in this case -- MS-S-2774, 2775, 2776, and 2777 -- (the "Excess Liability" policies). The Primary Liability policy, effective from May 1, 2008, to May 1, 2010, provides W&T with $1 million per occurrence coverage for, *inter alia*, applicable bodily

---

[2]Since the Court has granted the plaintiffs' motions for summary judgment, W&T's motion for partial summary judgment is moot.

injury, property damage, personal injury, and medical payment claims; an endorsement also extends coverage to removal of wreck or debris claims.[3]

Excess Liability policy No. MS-S-2774, effective from May 1, 2008, to May 1, 2009, is the first layer Excess Liability policy and provides $10 million coverage per occurrence or the aggregate excess of the Retained Limit. Liberty and Starr each subscribed to 50% of the policy.

Policy No. MS-S-2775, effective from May 1, 2008, to May 1, 2009, is the second layer Excess Liability policy and provides coverage with limits of $15 million per occurrence or the aggregate excess of the Retained Limit. Starr subscribed to 50%, New York Marine subscribed to 33.33%, and Navigators subscribed to 16.67% of the policy.

Policy No. MS-S-2776 is the third layer Excess Liability policy and was effective from May 1, 2008, to May 1, 2009. It provides coverage with limits of $25 million per occurrence or in the aggregate in excess of a Retained Limit. The Indemnity Insurance company subscribed to 50%, New York Marine subscribed to 30%, and Navigators subscribed to 20% of the policy.

Policy No. MS.-S-2777, effective from May 1, 2008, to May 1, 2009, provides coverage with limits of $25 million per occurrence or in the aggregate in excess of a Retained Limit. Starr subscribed to 37.5%, XL Specialty subscribed to 25%, New York Marine subscribed to 18.75%, and Liberty subscribed to 18.75% of the policy. The Excess Liability policies are all endorsed to include coverage for removal of wreck or debris expenses. The Excess Liability policies, however, do not provide coverage for property damage and operators extra expense.

On September 12, 2008, Hurricane Ike struck the Gulf of Mexico and allegedly damaged over 150 offshore platforms in which W&T had an interest. On September 19, 2008, W&T gave notice to the Excess Liability underwriters of potential claims for losses to the offshore platforms

---

[3]The Primary Liability policy is not at issue in this case.

and, on September 24, 2008, W&T gave notice of potential claims for removal of wreck or debris. Braemar Steege, Inc. ("Braemar Steege") was appointed loss adjusters for W&T's claims.

Braemar Steege reported on February 12, 2012, that W&T submitted claims for operators extra expense and physical damage under the Energy Package policy and Excess Named Windstorm policies (the "Package Policy") for which approved costs exceed $150 million. Braemar Steege forecasted that W&T's operators extra expense and physical damage claims "will exhaust the underlying Package Policy limit of" $150 million and that W&T will thereafter submit claims for all removal of wreck or debris to the Excess Liability policies underwriters. Braemar Steege also reported that the removal of wreck or debris claims are estimated to exceed $50 million.

Anticipating that W&R will submit its claims for removal of wreck or debris under the Excess Liability policies, the plaintiffs commenced action in this Court, seeking a declaratory judgment that W&T's claims are not covered under the Excess Liability policies at issue because the Retained Limit of those policies has not been exhausted.[4]

## III. CONTENTIONS OF THE PARTIES

### A. The Plaintiffs' Contentions

The plaintiffs argue that the Excess Liability policies afford coverage only when the underlying insurance is exhausted by payment of one or more claims that would also be covered by the Excess Liability policies themselves. Therefore, the plaintiffs contend that because W&T's physical damage and operators extra expense claims are not insured by the Excess Liability policies, they cannot be used to exhaust the underlying insurance. Since the Retained

---

[4]Various actions were filed by the plaintiffs but they were all consolidated into this case.

Limits of the Excess Liability Policies have not been exceeded, the plaintiffs argue, then coverage under those policies has not been triggered and, therefore, the claims for removal of wreck or debris that W&T intends to submit are not covered.

### B. W&T's Contentions

W&T, on the other hand, argues that the sections of the Excess Liability policies upon which the plaintiffs rely to make their argument do not apply in this case. Rather, W&T contends, the plain language of the Excess Liability policies makes clear that they will be triggered when W&T depletes the Retained Limit applicable to each policy, without regard to the nature of the costs that resulted in the depletion. In other words, W&T argues that the Retained Limit of the Excess Liability policies can be depleted by claims that are not covered by the Excess Liability policies themselves.

### IV. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The

nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.     ANALYSIS AND DISCUSSION

The Court is of the opinion that the underlying insurance can only be exhausted by claims that are also covered by the Excess Liability policies themselves. Therefore, since W&T's physical damage and operators extra expense claims are not insured by the Excess Liability policies, they cannot be used to reduce or exhaust the underlying insurance. Since the underlying insurance has not been exhausted, coverage under the Excess Liability policies has not been triggered and there is no coverage for the costs for removal of wreck or debris that W&T intends to submit. Accordingly, the plaintiffs are entitled to summary judgment.

### A.     General Principles Regarding The Interpretation of Insurance Policies.

Under Texas Law, which governs this suit, insurance policies are construed in accordance with the same general rules that govern the interpretation of contracts, and must be interpreted to

effectuate the intent of the parties at the time the contracts were formed. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Therefore, terms within an insurance contract are to be given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

If an insurance contract is worded such that it "can be given a definite or certain legal meaning," then it is unambiguous and can be enforced as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract is ambiguous, however, the court should adopt the interpretation that is most favorable to the insured. *Id.* Nevertheless, a contract is not ambiguous merely because the parties offer contradictory interpretations. Rather, ambiguity exists only when the contract is susceptible to two or more reasonable interpretations. *See Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n. 28 (5th Cir. 2000) (citations omitted).

### B. The Excess Liability Policies Provide No Coverage For W&T's Claims For Removal Of Wreck Or Debris.

The resolution of the instant dispute centers around the following provisions, which are found in all of the Excess Liability policies at issue in this case. Section I, "Coverage," provides that:

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in **INSURING AGREEMENT III, LIMITS OF INSURANCE.**

(emphases in original).  Therefore, pursuant to Section I, the underwriters of the Excess Liability policies are liable only for the portion of damages in excess of the Retained Limits of each policy.  Moreover, by its own terms, Section I requires an analysis of Section III in order to determine what amount, if any, the underwriters of the Excess Liability policies will be responsible for.  Section III, entitled "**LIMITS OF INSURANCE**," contains the following relevant subsections:

> D. . . . If the applicable limits of insurance of the policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** *or of other insurance providing coverage* to the **Insured** are reduced or *exhausted by payment of one or more claims that would be insured by our Policy* we will:
>
> 1. In the event of reduction, pay in excess of the reduced underlying limits of insurance; or
>
> 2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.
>
> E. **Retained Limit**
>
> We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:
>
> 1. The total of the applicable limits of the underlying policies listed in the **SCHEDULE OF UNDERLYING INSURANCE** and *the applicable limits of any other underlying insurance providing coverage to the* **Insured** …

(Emphases in bold provided in original text and other emphases are added).

The Court is of the opinion that the plain language of the above-mentioned provisions establishes that: (1) coverage under the Excess Liability policies arises only when the Retained Limits of the Excess Liability policies have been exhausted; and (2) the applicable Retained Limits can be exhausted only by payment of "one or more claims that would [also] be insured" by the Excess Liability policies themselves.  Therefore, since the property damage and operators

extra expense claims that are paid pursuant to the underlying policies are not the types of claims that are also "insured" by the Excess Liability policies, they cannot be used to exhaust the Retained Limits of the Excess Liability policies.[5] As a result, coverage under the Excess Liability policies has not been triggered and the claims for removal of wreck or debris that W&T intends to submit will not be covered under the policies. *See Westchester Fire Insurance Co. v. Stewart & Stevenson Services, Inc.*, 31 S.W.3d 654, 658, 660 (Tex. App.- Houston [1st Dist. 2000, pet. denied) (the excess liability policy was not triggered because, pursuant to its own terms, it did not recognize the exhaustion of the primary policy by payment of costs that were not covered by the excess liability policy itself); *cf. Colony Nat. Ins. Co. v. Sorenson Med., Inc.*, CIV.A. 2010-74, 2011 WL 6740537, at *15 (E.D. Ky. Dec. 21, 2011) (the court found "persuasive[]" the argument that, "allowing a non-covered claim to erode the underlying limits would accelerate the excess carrier's obligation and effectively make it 'primary' on claims which its policy does not otherwise cover, thereby undercutting the excess nature of the policy") (citing *Westchester Fire*, 31 S.W.3d at 659).

W&T claims that the above-mentioned provisions of the Excess Liability policies are inapplicable under the facts of this case and, in any event, any ambiguity should be decided in its favor as the insured. The Court finds W&T's claims unpersuasive because a contract is not ambiguous merely because the parties offer contradictory interpretations. Rather, ambiguity exists only when the contract is susceptible to two or more reasonable interpretations, which is not the case in this dispute. *See Creative Dev. Co.*, 232 F.3d at 414 n. 28.

---

[5]W&T does not dispute that the only claims for which it has sought reimbursement in the underlying policies are for physical damage and operators extra expense. Similarly, W&T does not appear to dispute the plaintiffs' contention that the property damage and operators extra expense claims paid pursuant to the underlying policies are not the types of claims that are also covered under the Excess Liability policies at issue in this case.

## VI.  CONCLUSION

Based on the foregoing discussion, the Court finds that coverage under the Excess Liability policies has not been triggered because the applicable Retained Limits of the Excess Liability policies have not been exhausted. Therefore, the Court GRANTS the plaintiffs' motions for summary judgment.

W&T's counterclaims are rendered moot by the Court's decision. The plaintiffs must file any claims for attorneys' fees as a separate motion within ten (10) days of this decision and W&T's response must be filed within ten (10) days of the plaintiffs' motion.

It is so **ORDERED**.

SIGNED on this 31st day of July, 2013.

_____
Kenneth M. Hoyt
United States District Judge